Randall Bolivar # 1719379
Ellis Unit
1697 FM 980
Huntsville, Texas 77343

August 10, 2015

Clerk of the Court,
Texas Court of Criminal Appeals
P.O. Box 12308
Austin, Texas 78711

VIA CERTIFIED MAIL
7014 3490 0002 2691 1557

RE: Documents for filing with the Court

REF:
WR-79,354-01
WR-79,354-02
WR-79,354-03

RECEIVED IN
COURT OF CRIMINAL APPEALS
AUG 17 2015
Abel Acosta, Clerk

Dear Clerk of the Court:

Enclosed please find my AMENDED MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS REQUESTING RELIEF FROM A PAROLE REVOCATION HEARING... for filing in Cause No. WR-79,354-01.

Additionally, also find enclosed my DEMAND FOR ADJUDICATION ON THE MERITS for filing in Cause Nos. WR-79,354-01; WR-79,354-02; and WR-79,354-03.

Thank you for your time and efforts on this matter. God Bless You!

Respectfully Submitted,

cc:
    State Prosecuting Attorney
    File

CAUSE NO. WR-79,354-01

| | | |
|---|---|---|
| EX-PARTE | § | IN THE COURT OF |
| | § | |
| RANDALL BOLIVAR | § | CRIMINAL APPEALS |
| | § | |
| Applicant | § | STATE OF TEXAS |

AMENDED MEMORANDUM OF LAW IN SUPPORT OF

APPLICATION FOR WRIT OF HABEAS CORPUS

REQUESTING RELIEF FROM A PAROLE REVOCATION HEARING IN CAUSE NO. 06-CRF-0501

FROM THE 105TH DISTRICT COURT OF KLEBERG COUNTY, TEXAS

TO THE HONORABLE JUDGES OF SAID COURT:

Applicant, Randall Bolivar, repectfully submits this AMENDED MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS REQUESTING RELIEF FROM A PAROLE REVOCATION HEARING IN CAUSE NO. 06-CRF-0501 FROM THE 105TH DISTRICT COURT OF KLEBERG COUNTY, TEXAS, pursuant to Article 11.07 of the Texas Code of Criminal Procedures (CCP).

PRELIMINARY STATEMENT ON MOOTNESS

On February 27, 2007, Mr. Boivar plead guilty to Possession of Marihuana and was sentenced to 5 years deferred adjudication. Upon motion by the State, the Applicant's probation was revoked, and he was sentenced to 15 years confinement in the Texas Department of Criminal Justice (TDCJ). In May 2012, Mr. Bolivar was erroneously released on parole, and transfered to the custody of Tennessee officials. Mr. Bolivar returned to Texas after his release from the Dickson County, Tennessee Sheriff's Office. Mr. Bolivar was issued a Parole Certificate by TDCJ-Parole Division, Parole Officer Flor Duran, and signed the three-party agreement to abide by the terms and conditions of parole. After TDCJ officials realized the error, TDCJ issued a warrant for Applicant's arrest, and Mr. Bolivar **voluntarily returned to custody** pending resolution. TDCJ officials held a revocation/erroneous release hearing, and Mr. Bolivar's parole was revoked. The issuance of the warrant and the denial of due process/course of law render Mr. Bolivar's **current** incarceration on the 15 year sentence illegal.

Subsequent to his parole revocation in the present case, Mr. Bolivar was sentenced to a 45 year term of confinement in Cause No. 09-CR-2869-A, ordered

I

to be served **consecutively** with the sentence he is currently serving. Mr. Bolivar is not currently earning time credits ever since his date of conviction, and will continue to NOT earn any time credits until his first sentence ceases to operate. CCP art. 42.08. The first sentence ceases to operate on the date the Texas Board of Pardons and Paroles (BPP) designates as the date the inmate would have been released on parole, as if serving only a single sentence. Tex. Gov't. Code, Sec. 508.150.

The issuance of the Parole Certificate on June 8, 2012 was effective and in full force at the moment Mr. Bolivar agreed to the terms and signed the three-party agreement between TDCJ, BPP, and Mr. Bolivar. Under HALE, the laws that apply to an erroneously released offender should be the same as if he were correctly and intentionally released by a designation of the BPP.

Although erroneous, Mr. Bolivar's release and issuance of a Parole Certific-ate must be treated as a designation by the BPP and the time served since June 8, 2012 must be credited toward Cause No. 09-CR-2869-A, as that is the date his previous sentence ceased to operate.

Mr. Bolivar had a valid liberty interest in the time from his release on parole to the time of his conviction in Cause No. 09-CR-2869-A. Time that would have been spent with his family (2 very young daughters), and aiding his defense counsel in his subsequent conviction. Additionally, Mr. Bolivar has a valid interest in the **future** street time lost due to the imposition of consecutive sentences. Mr. Bolivar is a fairly young man at the age of 34 years old. It is reasonable to believe he would be released, if he served the entire 45 year sentence, day for day. However, Mr. Bolivar becomes parole eligible on the 45 year sentence once he has served one half of the sentence, which would 22.5 years. And because Mr. Bolivar was awarded jailtime credits for the time served awaiting trial under indictment, it is safe to presume that Mr. Bolivar could expect to be released from prison during his lifetime, seeing as how he would be parole eligible in the subsequent sentence before the age of 50. Hwoever, as it stands, Mr. Bolivar is not currently earning any time credits on the 45 year sentence, and he will not do so until such time as the 15 year sentence ceases to operate. Therefore, the claims in this application are not moot.

2

In addition to time credits, Mr. Bolivar has a financial interest in the loss of Disability Compensation Benefits provided by the U.S. Department of Veteran's Affairs (VA), stemming from his Service-Connected injuries during his Honorable Service in the U.S. Army Infantry, which is a collateral consequence of his conviction. The VA procedures, under Title 38 U.S.C., allow for a reduction in VA Disability Compensation payments **60 days after a conviction** of felony grade. The date of conviction triggers the start of the 60 day grace period, **NOT ARREST OR PRE-TRIAL DETENTION.** Under VA rules, Mr. Bolivar was entitled to receive compensation payments at the full rate upon his parole  either on May 31, 2012 or June 8, 2012, up until 60 days after his subsequent conviction on January 9, 2014. Here, the State has denied Applicant his interest in property without due process/course of law, because his revocation and return to custody was a violation of his due process and due course of law rights. Therefore, under either theory, but most especially once combined, the claims made in this application are not moot.

## STATEMENT REGARDING JURISDICTION

Mr. Bolivar's Application for Writ of Habeas Corpus is properly before this Court pursuant to Art. 11.07, CCP. Because the Court has not ruled on the merits of Mr. Bolivar's original application, this amendment is proper. See BANKS v. DRETKE, 540 U.S. 668, 694 (2006).

## STATEMENT OF FACTS

On Febreuary 27, 2007, Mr. Bolivar plead guilty to Possession of Marijuana in the 105TH District Court of Kleberg County and was sentenced to five years deferred adjudication. On February 5, 2008, Kleberg County filed a Motion to Revoke Community Supervision and to Adjudicate Guilt for allegations related to pending drug charges out of Dickson County, Tennessee, and the State subsequently amended that motion on September 17, 2008. These motions were never heard. On March 16, 2011, the State filed a Second Amended Motion to Revoke Community Supervision and to nadjudicate Guilt adding allegations of Murder and Aggravated Assault with a Deadly Weapon. The Court found the Murder allegation to be NOT TRUE; while it found the Aggravated Assault with a Deadly Weapon, along with other counts, to be True and sentenced Mr. Bolivar to 15 years in the TDCJ-Institutional Division on April 28, 2011.

On May 11, 2012 the 105TH Distrcit Court entered a Judgment Nunc Pro Tunc

awarding jailtime credits, and based on these credits, Mr. Bolivar became parole eligible on December 22, 2010 or prior.

On May 31, 2012, TDCJ released Mr. Boivar, on parole, into the custody of Dickson County, Tennessee to face the charge of Possession of Marijuana. Mr. Bolivar plead guilty on June 6, 2012, and Tennessee officials released Mr. Bolivar after contacting and receiving instructions from TDCJ to do so. Mr. Bolivar returned to Brownsville, Texas and reported to the Harlingen District Parole Office on June 8, 2012. At the Harlingen Parole Office, TDCJ officials executed the Parole Certificate, assigned him a parole officer, provided him with a letter of verification of his parole, and released him on parole. At no time was Mr. Bolivar ineligible to be released on parole.

Later that day, on June 8, 2012, TDCJ issued a warrant for the retaking of administratively released prisoner. Mr. Bolivar turned himself into local law enforcement authorities on June 9, 2012, and has been in custody since.

On August 3, 2012, a revocation/erroneous release hearing was held at the McConnell Unit in Beeville, Texas. Mr. Bolivar requested subpoenas issue for several witnesses, but BPP/TDCJ failed to issue subpoenas. The hearing proceeded without the witnesses present, despite Mr. Bolivar's oral request that the witnesses at least be made available telephonically. The hearing officer found that Mr. Bolivar was erroneously released, and based her decision primarily on an affidavit by an employee of the TDCJ-Parole Division, who was not present nor unavailable.

On April 8, 2013, Applicant filed a pro se Application for Writ of Habeas Corpus in accordance with Art. 11.07 of the Texas Code of Criminal Procedure. **This Court granted the writ and remanded** to the trial court for findings of fact on September 3, 2013.

On January 9, 2014, a jury convicted Mr. Bolivar of the Murder previously found to be not true by proponderance of the evidence, and sentenced him to 45 years confinement in Cause No. 09-CR-2869-A, to run consecutively with his previous 15 year sentence. On April 14, 2014 Mr. Bolivar filed a Pro Se Notice of Advisory to inform the Court of the new conviction, and advising it of the order of a CONSECUTIVE SENTENCE and VA Benefits. This Court dismissed his writ as moot on April 30, 2014. Applicant filed a Pro Se Motion For Reconsideration,

4

which was denied.

Mr. Bolivar's conviction in Cause No. 09-CR-2869-A is currently on appeal to the Thirteenth Court of Appeals. That appellate court has already remanded the case once by written Order on March 11, 2015. The cause number in that case is 13-14-00157-CR.

## ARGUMENT

## PREMATURELY DISMISSED AS MOOT

Simply stated, a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interests in the outcome. See COUNTY OF L.A. v. DAVIS, 99 S.Ct. 1379, 1383 (1979). Two prongs must be met in order to be qualified as moot. First, it can be said with assurance that "there is no reasonable expectation..." that the alleged violation will recur. U.S. v. W.T. GRANT CO., 73 S.Ct. 894, 897 (1953). Second, interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. DEFUNIS v. ODEGUARD, 94 S.Ct. 1704 (1974). When BOTH conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

In the case at bar, Applicant has two live controversies. First, he was deprived of liberty for approximately 19 months, and still has a valid interest in future street time. Second, without a doubt, Mr. Bolivar is entitled to back-pay from VA once this matter is properly resolved. Given the amount of time and compensation due, it is in the tens of thousands of dollars Mr. Bolivar has a significant financial interest in.

Additionally, at no point did any party move the Court to dismiss the instant as moot. Clearly the Court's action was premature. But even upon proper motion by a party, "the burden of demonstrating mootness is a heavy one." WEST v. SECRETARY OF DEPT. OF TRANSPORTATION, 206 F.3d 920, 924-925 (9TH Cir, 2000). "[I]n deciding a mootness issue, 'the question is not whether the precise relief sought at the time the application for an injuction was filed is still available. The question is whether there can be any effective relief.'" Id., at 925. Here, Applicant may no longer be eligible to be released from custody completely, but he is able to be released to parole on the 15 year sentence, earn credit toward the 45 year sentence, and receive backpay from the VA.

The Court's duty to adjudicate the merits of the case is aptly noted in WRIGHT & MILLER, 13A FEDERAL PRACTICE AND PROCEDURE § 3533.3 at 278 ("... the central responsibility remains unchanged— decision should not be denied if a wothwhile remedy can be given."). And in this case, there is a significant ⁻⁻⁻ amount of remedy and relief that may be given to the Applicant.

**GROUND ONE:** The warrant issued by TDCJ (Warrant # 06471842) is invalid on its⁻ face, because Mr. Bolivar was at all times parole eligible and no⁻other requirements of Tex. Gov't. Code § 508.252 were met.

The warrant issued is invalid on its face, because it did not state a valid reason for Mr. Bolivar's return to custody. The warrant was issued under the authority of Tex. Gov't. Code § 508.252, which provides that a warrant or summons may be issued to retake a releasee into custody for one of the following four reasons:

(1) There is reason to believe that the person has been released although **NOT ELIGIBLE** for release;

(2) The person has been arrested for an offense;

(3) There is a document that is self-authenticating as provided by Rule 902, Texas Rules of Evidence, stating that the person violated a rule or condition of release; or

(4) There is reliable evidence that the person has exhibited behavior during the person's release that indicates to a reasonable person that the person poses a danger to society that warrants the person's immediate return to custody. Tex. Gov't. Code § 508.252.

Here, Mr. Bolivar was eligible for release on parole on December 22, 2010, and the warrant was issued on June 8, 2012. At the time TDCJ issued the warrant, Mr. Bolivar was eligible for release on parole. Mr. Bolivar was not arrested for an offense after having been released. Mr. Bolivar was arrested in 2009, long before his release on parole in 2012, and no subsequent arrest exsists to provide a basis for the issuance of a warrant. TDCJ failed to allege any violation of a rule or condition of parole. In fact, TDCJ affirmatively states that no violation was committed. (See Rudi Martinez Affidavit). Finally, TDCJ has not alleged any behavior exhibited by Mr. Bolivar while released that poses a danger to society. To the contrary, Mr. Bolivar immediately turned himself into the local authorities when he saw that a warrant had been issued through the local news.

Additionally, the Martinez affidavit was executed on June 25, 2012— 17 days

6

after the warrant was issued. Even if this affidavit, incorrectly asserting ineligibility for parole, would be sufficient to support issuance under Tex. Gov't. Code § 508.252 (3), it is not a valid basis for the warrant, because it was not executed until well after the warrant was issued and Mr. Bolivar was taken into custody.

Therefore, the warrant issued to take Mr. Bolivar back into TDCJ custody was invalid at the time it was executed, and Mr. Bolivar's subsequent incarceration is a violation of the 4TH AMENDMENT'S warrant requirement, the Texas Constitution, abd Tex. Gov't. Code § 508.252.

**GROUND TWO**: The Erroneous Release Hearing is non-existent under Teaxs statutes and held in violation of Mr. Bolivar's due process/due course of law rights under the 14TH Amendment of the U.S. Constitution and Article I Sec. 9, Texas Constitution.

Under the MORRISEY doctrine, a release is entitled minimal due process requiremnets prior to revocation. This includes a preliminary or on-site hearing before an independent hearing officer held to determine whether probable cause exists to believe that the parolee has violated the conditions of probation. The releasee "must have an opportunity to be heard and to show, if he can, that he did not violate the conditions." Id. at 488. A revocation hearing must comply with certain procedural requirements: written notice, disclosure to the parolee of the evidence, the right to cross-examine adverse witnesses, a neutral hearing body, and a written statement by the factfinder as to the evidence relied upon and the reasons for revoking parole. EX PARTE GLENN, 690 S.W.2d 578, 581 (CCA 1985).

On June 8, 2012, Mr. Bolivar reported to the Harlingen District Parole Office where he was issued a Certificate of Parole and entered into a binding agreement with BPP and TDCJ to abide by the terms and conditions of parole. He was further provided with a seperate document verifying his release from custody and in parole status. He was placed under the supervision of District Parole Officer Flor Duran. A parole certificate becomes "effective and in force" once "conditions are agreed to signed, and accepted by the offender." 37 Tex. Admin. Code § 145.20 (2002)(Tex. Board of Pardons and Paroles, Parole Process). The fact that Mr. Bolivar's Parole Certificate was not issued following a vote by a 3-member parole panel is not a bar to his subsequent release on parole being a valid release.

7

It is obvious from the facts that BPP/TDCJ had no intention of releasing Mr. Bolivar to parole; however, that does not change the fact that they did. Mr. Bolivar's release to parole, although erroneous, is still a release to parole. He is a "releasee serving an unauthorized conditional release;" and the law that governs releasees is applicable in this case. EX PARTE HALE, 117 S.W.3d 866, 872. Therefore, he is entitled to the same due process under MORRISSEY v. BREWER, 408 U.S. 471 (1972).

As noted above, even though Mr. Bolivar specifically requested a preliminary hearing, he was NOT afforded one in violation of MORRISSEY'S mandates.

Once again, the BPP/TDCJ officials held what was called both an Erroneous Release Hearing and a Revocation Hearing. However, an Erroneous Release Hearing is nowhere to by found in statute, or even in BPP/TDCJ policies. An allegation of an erroneous release must be presented in a Revocation Hearing. And the same rules must apply as any other revocation hearing, including a violation of a rule or condition of parole. That did not occur in this case.

I. Evidence was legally insufficient to support revocation under the Due Process Clause of the FOURTEENTH AMENDMENT of the U.S. Constitution and the Due Course of Law Clause under the Texas Constitution, in that the State failed to allege and prove a violation to support revocation of parole.

The revocation hearing was a violation of Mr. Bolivar's due process rights, because at the time of the release Mr. Bolivar was eligible for release on parole and the State failed to allege any violations of parole. A releasee has a significant interest in his continued liberty that entitles him to a limited right to due process/course of law, and that liberty interest is not rendered moot by a valid incarceration on a new charge. EX PARTE SNOW, 899 S.W.2d 201 (CCA 1995).

The State's sole accusation at the hearing was that Mr. Bolivar was "ineligible release." (1C.R. 41). The Hearing Officer relied on an affidavit from Rudi Martinez, Program Specialist I, Warrants Section-TDCJ, which stated "Offender is not eligible for release until a future unknown date or the Maximum date of 02-01-2024." (1C.R. 44). In a subsequent affidavit executed on the same day, Martinez affirms that **no violations** or arrests occurred while on supervision.

(1C.R. 60). Additionally, the hearing officer relied on Mr. Bolivar's "Commitment Inquiry," which clearly rebuts Martinez's assertion that Mr. Bolivar was not eligible for release until an unknown future date. The Commitment Inquiry clearly shows that Mr. Bolivar became parole eligible on "12-22-2010." (1C.R. 45). Furthermore, the hearing made the specific finding that "offender has met the initial parole eligibility date for all instant offenses." (1C.R. 38).

II. Admission of testimonial hearsay constitutes a violation of the Confrontation Clause of the U.S. Constitution.

The hearing officer admitted two affidavits executed by Rudi Martinez as substantive evidence, and noted finding that Mr. Bolivar's revocation was based on one of them. (1C.R. 37). Both affidavits were admitted over Applicant's objections as a Business Record Affidavit "used in the normal course of business and the author has no vested interest in the outcome of the hearing." Id. at 36. Under the MORRISSEY doctrine, a releasee is entitled to minimal due process prior to a revocation, which includes the opportunity to cross examine adverse witnesses. GLENN, 690 S.W.2d at 581.

The Texas Rules of Evidence (TRE) apply in parole hearings. 37 TAC § 147.22. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial **or hearing** offered in evidence to prove the truth of the matter asserted." TRE 801(d). Certain business records are admissable as an exception to the hearsay rule. TRE § 803 (6). In the absence of live testimony they must be accompanied by a properly executed affidavit in order to be self-authenticating. TRE § 902 (10). The purpose of the Business Record Affidavit is to authenticate the records attached and allow admission of records that would otherwise be excluded as inadmissable hearsay without requiring live testimony. Therefore, the records are the substantive evidence, not the affidavit itself. Furthermore, a properly executed business record affidavit must include assertions that the records attached: (1) were made at or near the time; (2) author had personal knowledge or made from information transmitted by a person with knowledge (3) kept in the course of regularly conducted business activity; (4) it was the regular practice of that business to make the record; and (5) executed by the custodian of records. TRE § 902 (10).

Here, the affidavit the hearing officer based her finding on meets none of

9

the requirements of a business affidavit. The affidavit in this case states that Rudi Martinez was employed as a Program Specialist I, Warrants Section-TDCJ, then recites a "synopsis of events leading to the issuance of the Ineligible Release Warrant for offender Bolivar, Randall." (1C.R. 43). The admitted affidavit merely recites statements that are hearsay that do not meet any of the requirements of exceptions or exclusions.

Furthermore, admission of Martinez's testimonial hearsay constitutes a violation of Mr. Bolivar's rights under the Confrontation Clause. In CRAWFORD, the Supreme Court identified types of statements that are part of a "core class of 'testimonial statements'" that include:

> (1) ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecut-orially; and

> (2) extajudicial statements... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. CRAWFORD v. WASHINGTON, 541 U.S. 36, 51-52 (2004).

Furthermore, where testimonial statements are at issue, the SIXTH AMENDMENT demands unavailability and a prior opportunity for cross-examination. Id. at 68.

Here, Mr. Bolivar objected to admission of Martinez's Affidavit on the grounds that he was denied his right to confront and cross-examine the author. (1C.R. 36). The hearing officer overruled his objection on the grounds that the affidavit was admissable as a Business Record Affidavit. As demonstrated above, the admitted affidavit does not meet the requirements of the Business Record Affidavit **and** includes testimonial statements as outlined in CRAWFORD. Martinez executed the affidavits for the purpose of the admission at the revocation hearing and would resoanbly expect the statements be used for the purpose of prosecution. Therefore, admission of the Martinez affidavits were a violation of Mr. Bolivar's right to confront witnesses under CRAWFORD and MORRISSEY.

Although the rules governing revocation hearing allow for testimony by written statements, the witness must have been personally served with a subpoena and a showing of good cause for the failure to appear. 37 TAC § 147.5. The record does not indicate that Rudi Martinez was ever personally served with a subpoena, and the hearing report is void of any good cause for Martinez's absence at the hearing. Rather, the record tends to show that Martinez was never served with a

sobpoena. Therefore, this is not a valid reason for a denial of Mr. Bolivar's
right to confront an adverse witness.


III. Denial of Mr. Bolivar's request of issuance of subpoenas of witnesses and
documents constitute a violation of his due process/course of law rights to be
heard and present witnesses and documentary evidence.


Prior to the revocation hearing, Mr. Bolivar submitted a sworn motion reque-
sting that issuance of subpoenas for: (A) four employees of TDCJ be served with
subpoenas to provide live testimony on his behalf; and (B) documents  in the
custody of TDCJ be provided to Mr. Bolivar for the purpose of presenting
evidence that he was in fact parole eligible at the time of his release.


Under MORRISSEY's doctrine, a releasee is entitled to minimal due process
prior to a revocation, which includes the opportunity to be heard and to
present witnesses and documentary evidence. GLENN, 690 S.W.2d at 581. A hearing
officer has the authority to issue subpoenas. 37 TAC § 147.2.


Here, Mr. Bolivar requested in a written motion signed on July 29, 2012 that
subpoenas be issued to aid in his defense. However, the hearing officer failed
to issue such subpoenas and denied his written motion requesting the subpoenas
on the grounds that Mr. Bolivar announced ready to proceed without a continuan-
ce. However, the record reflects that Mr. Bolivar also submitted a written
motion for witnesses to be allowed to appear telephonically. This motion was
also denied. Mr. Bolivar then orally moved that the witnesses be allowed to
testify telephonically. The hearing officer denied this motion citing that all
testimony must be live. (1C.R. 36). [This contradicted her previous ruling on
Applicant's objection to the Rudi Martinez affidavit.] Indeed, this is inaccur-
ate as testimony may be presented by written statement, if a witness has been
personally served with a subpoena and fails to appear upon finding of good
cause by the hearing officer. 37 TAC § 147.5.


The actions and rulings of the hearing officer of a denial of Mr. Bolivar's
right to present witnesses and documentary evidence is a clear abuse of discre-
tion. The hearing officer's failure to issue the subpoenas requested prevented
Mr. Bolivar from presenting the witnesses, because the four witnesses were TDCJ
employees and the documents were in the sole possession of the State. Failure

to issue the subpoenas effectively tied Mr. Bolivar's hands in his effort to present evidence in his defense.

GROUND THREE: Releasee's Certificate of Parole was illegally voided by the State depite compliance by Releasee, which is in violation of the three-party agreement/contract that resulted in an illegal revocation/restraint.

It is the Applicant's position that his three-party agreement/contract with BPP and TDCJ was illegally voided because the State (BPP and TDCJ) failed to execute the terms and conditions which they were required to adhere to within the agreement and state statutes.

In EX PARTE SEYMOUR, 231 S.W.2d 448 (CCA 1950), the court determined that a conditional pardon (or in this case, parole) is a **contract** between pardoned person and the State, and its acceptance is an agreement to be bound by terms thereof. Statutes in Texas interchange pardons and paroles within the statutes.

It is doubtful that the State will argue that their own contracts are so ambiguous and vague that they require this Court to make an interpretation of the Certificate of Parole, and its relevant statutes. Even so, this Court has previously held that a parole certificate can not be voided without meeting procedural requirements required under the law. The State must employ minimum requirements of due process/course of law in order to revoke parole. EX PARTE MATHIS, 899 S.W.2d 203 ( CCA 1995). As shown in Grounds One and Two, the State failed in meeting the minimum requirements.

Mr. Bolivar entered into an agreement with BPP (facsimile signature of BPP Chairperson, Rissie Owens), and TDCJ (signature of TDCJ-Parole Division Officer, Flor Duran). (Exhibit #1). See 37 TAC § 145.20.

The United States Supreme Court in HEWITT v. HELMS, 103 S.Ct. 864 and SANDIN v. CONNER, 115 S.Ct. 2293 made clear that a "liberty interest" may be created by a **state statute,** rule, **agreement** or order. In HEWITT v. HELMS, the Court held that mandatory language in connection with substantive predicates establishes that a statute, rule or agrrement has created a "liberty interest" and once created, is enforcable by the Due Process Clause of AMENDMENTS 5 and 14. However, in SANDIN, the Court specifically stated that the only time a

12

liberty interest shall be acknowledged is when the prisoner demonstrates that the state's actions statute created in him an expectation of remaining free. In this case, Applicant contends that the Texas Administratice Code and Certificate of Parole, combined with the fact that he was actually released, created a legitimate expectation that he would remain free on parole if he abided by the terms and conditions of the agreement. Thus, his revocation and voiding of his Certificate of Parole was illegal under Supreme Court precedents, and this Courts prior holdings. Therefore, Applicant's parole should be reinstated.

**GROUND FOUR**: Does the Board of Pardons and Parole Chairperson have the authority to administratively release a person eligible for parole from custody under current State laws?

Under the Tex. Gov't. Code, sec. 508.141, is the "Authority to Consider and order Release on Parole," just as stated in 37 TAC 145.2 (a); and under 37 TAC 141.1 (a), the "presiding officer reports directly to the governor and serves as ther administrative head of the board. The presiding officer acts as spokesperson for the board." While a releasee requires a parole panel approval, under current rules, the Chairperson has been endowed sufficient authority and discretion to be considered a panel. Rule 141.7. "the presiding officer (chair) shall designate the composition of each panel." Thus, the Chairperson may designate herself as a sngle-member panel and vote to release a person in custody, and eligible for parole, if she so chooses.

Indeed, Rule 141.51 clearly state that "These rules are prescribed for the performance of the constitutional and statutory powers and functions vested in the board. **In no event shall they or any of them be construed as a limitation or restriction upon exercise of any discretion by the board or by a parole panel.**"

As the administrative head and spokesperson for the board, Ms. Owens exercised her authority and discretion— without limitation or restriction— to consider and order the Applicant released on parole. Applicant can not be now arbrtarily deprived of this administrative release granted by the administrative head.

**GROUND FIVE**: Applicant claims he is ACTUALLY INNOCENT of the allegation made against him during the parole revocation hearing.

13

The State alleged that Mr. Bolivar was "ineligible release" from "Cameron County, Texas" on /about "June 8, 2012."

However, Mr. Bolivar was released from TDCJ custody on May 31, 2012 from the Huntsville Unit which is located in Walker County, Texas. He was transfered to the custody of Tennesse officials. Applicant was then released from Tennessee custody on June 6, 2012 from Dickson County, Tennessee. At all times during this process, Applicant was eligible for parole.

Therefore, Mr. Bolivar makes his claim of **ACTUAL INNOCENCE** of a parole revocation allegation. Applicant has spent countless hours attempting to find case law on this matter, and has found none. Applicant believes this to be a novel claim in Criminal Law which this Honorable Court has not addressed.

## CONCLUSION

Mr. Bolivar argues that the State has deprived him of his state-created liberty interests of jailtime credits and future street time, as well as his VA benefits. He has an inherent and sacred right to be secure in his liberty once released from custody. Furthermore, he has a right to be protected in his property interests from arbitary actions by the State that would deprive him of his benefits and compensation earned from his Honorable Military Service. For those reasons, both said and unsaid, Applicant is entitled to the relief requested.

## PRAYER FOR RELIEF

Applicant prays for the Court to reinstate parole in Cause No. 06-CRF-0501 with an effective date of June 8, 2012.

Applicant further prays the Court order the 107TH District Court of Cameron County, Texas to enter an order granting jailtime credits from January 9, 2014 to the date of then order, in Cause No. 09-CR-2869-A.

Applicant further prays the Court will order copies of these orders be sent to TDCJ and Department of Veterans Affairs, Houston Regional Office.

Respectfully Submitted,

Randall Bolivar, Pro Se
Applicant
Ellis Unit, TDCJ # 1719379
Huntsville, Texas 77343

14

VERIFICATION

STATE OF TEXAS                    §
                                  §
COUNTY OF WALKER                  §

AFFIDAVIT

I, Randall Bolivar, being presently incarcerated within TDCJ-CID, O.B. Ellis
Unit, located in Walker County, Texas, declare under penalty of perjury without
the United States, that I have read the above and foregoing memorandum of law
and demand for adjudication, and that every allegation and fact stated therein
and herewith are true, correct, and complete pursuant to Title 28 USC § 1746 (1).
Executed on August 10, 2015.

_____
Randall Bolivar, Affiant

CERTIFICATE OF SERVICE

I, Maria S. Rey, certify that a true and correct copy of the above and foregoing
documents have been served on opposing counsel for the State at:

    State Prosecuting Attorney
    P.O. Box 12405
    Austin, Texas 78711

Signed on August 14, 2015.

_____
Maria S. Rey